IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| Marlon Summerville, )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>C.W. Shields, )<br>    Defendant. ) | 1:12cv1505 (JCC/TRJ) |

F I L E D
AUG 22 2013
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

## MEMORANDUM OPINION

Marlon Summerville, a Virginia inmate proceeding pro se, has filed a civil rights action, pursuant to 42 U.S.C. § 1983, alleging that Officer Shields used excessive force during plaintiff's arrest in violation of the Fourth Amendment. Defendant filed a Motion to Dismiss/Motion for Summary Judgment and accompanying memorandum and informed plaintiff that he had twenty-one (21) days to respond pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). In response, plaintiff filed Motion to Voluntarily Dismiss this action. The court cannot dismiss an action without a stipulation of dismissal signed by all parties. See Fed. R. Civ. P. 41(a)(1). Because defendant has opposed the Motion to Voluntarily Dismiss, it will be denied. For the following reasons, Officer Shields's Motion to Dismiss/Motion for Summary Judgment will be granted, and summary judgment will be entered in his favor.

### I. Background

The following facts are undisputed:

On January 2, 2012, Summerville went to Prince William Hospital "for a change in Mental Status Review." He was experiencing difficulty focusing, thinking, and controlling his actions. Contrary to his wishes, the hospital "refused" to commit him for a "Serious Mental Evaluation." Def. Mem. ¶ 1, ECF No. 12. As a result of his mental status at that time, Summerville harmed himself, harmed another patient, kissed an emergency medical technician

against her will, and came into possession of a pair of scissors, which he refused to release despite being ordered to do so by the police. Id. ¶ 2. The hospital contacted the Manassas Police Department reporting Summerville for disorderly conduct. Id. ¶ 3. Officer Shields was dispatched in response to that call, and upon his arrival at the hospital he received information "that someone was stabbed." Id. Plaintiff alleges that Officer Shields used excessive force when he restrained plaintiff. As relief, he seeks monetary damages.

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that judgment on the pleadings is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (moving party bears the burden of persuasion on all relevant issues). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden then shifts to the non-moving party to point out the specific facts which create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Those facts which the moving party bears the burden of proving are facts which are material. "[T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of

2

summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when, "the evidence . . . create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the non-moving party. Matsushita, 475 U.S. at 587.

### III. Analysis

Summary judgment in favor of Officer Shields is appropriate because the pleadings, affidavits, and exhibits on file demonstrate that the amount of force he used in restraining plaintiff was reasonable given the circumstances. In Graham v. Connor, 490 U.S. 386, 394 (1989), the Supreme Court instructed that "[i]n addressing an excessive force claim brought under [42 U.S.C.] § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." Essential to this determination is plaintiff's status —whether he was an arrestee or a pre-trial detainee—at the time of the use of force. Id. The Fourth Amendment governs claims of excessive force during the course of an arrest, investigatory stop, or other "seizure" of a person. Id. at 388. A pre-trial detainee, however, is entitled to the protections of the Due Process Clause of the Fourteenth Amendment. United States v. Cobb, 905 F.2d 784, 788 (4th Cir. 1990). In Riley v. Dorton, 115 F.3d 1159, 1161 (4th Cir. 1997), the United States Court of Appeals for the Fourth Circuit instructed that a person is an "arrestee" when an officer decides to detain him and that the Fourth Amendment applies only to the single act of the arrest.

Under the uncontested facts in this record, plaintiff was an "arrestee" at the time of the events giving rise to his complaint. Accordingly, his claim of excessive force properly is analyzed under the Fourth Amendment's standard of reasonableness. See Vathekan v. Prince

3

George's County, 154 F.3d 173, 178 (4th Cir. 1998). This standard takes into account the severity of the alleged crime for which the person is being detained, whether the suspect poses a threat to the safety of the police officers or others, and whether the suspect was attempting to evade arrest by flight or actively resisting arrest. Graham, 490 U.S. at 396; see Foote v. Dunagan, 33 F.3d 445 (4th Cir. 1994). The reasonableness of the use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 at 396, citing Terry v. Ohio, 392 U.S. 1, 20 - 22 (1968). To assess the objective reasonableness of the force used, a court must look at the salient events "in full context, with an eye toward the proportionality of the force in light of all the circumstances." Thomas v. Harmon, 2005 WL 5714146 at * 3–4 (E.D. Va. Dec. 5, 2005) (Brinkema, J.), aff'd, 192 Fed. App'x. 209 (4th Cir. 2006).

Plaintiff alleges that Office Shields used excessive force to restrain plaintiff and did not consider plaintiff's mental state at the time of incident. He alleges that Officer Shields violated his constitutional rights by "tasering me 8-10 times, ordering a police dog to bite me on my arm, causing nerve damage, macing me as well as beating me with an A.S.P. baton knocking out my teeth because I would not release scissors that I had no knowledge of having." Compl. 4, ECF No. 1.

Officer Shields's sworn affidavit, attached to the Motion to Dismiss/Motion for Summary Judgment, shows that he acted reasonably under the circumstances. Officer Shields states that when he entered the Emergency Room, he saw Mr. Summerville holding a pair of scissors. Shields Aff. ¶ 3, ECF No. 12-1. He states that he "drew his Taser and ordered Mr. Summerville to drop the scissors. Mr. Summerville complied with my order initially, but when I ordered him to lie down on the ground he replied "fuck this" and picked the scissors back up." Id. Officer Shields deployed the Taser, but plaintiff walked toward the Emergency Room exit and stated

"that shit don't hurt. . . ." Id.

Officer Shields gave plaintiff a second command to drop the scissors, but plaintiff continued to walk away. Id. ¶ 4. Officer Shields deployed the Taser a second time, but plaintiff continued to walk toward the road. Id. Accordingly, Officer Shields requested assistance. Id. After continuing to give plaintiff commands to drop the scissors, Officer Shields directed a stream of pepper spray toward plaintiff's eyes. Id. ¶ 5. Officer Shields states that the spray "appeared to have no effect and he still refused to drop the scissors." Id.

While Officer Shields continued to give plaintiff commands to drop the scissors, another officer arrived with a police dog. Officer Shields explains that the officer "deployed his K-9[,] which took hold of Mr. Summerville's right arm. Mr. Summerville still refused to drop the scissors. . . ." Id. Ultimately, Officer Shields used his baton to strike plaintiff's arm and, with the help of other officers, removed the scissors from plaintiff's hand. Id. ¶ 6.

Given the totality of the circumstances Officer Shields faced, his actions were not objectively unreasonable. From Officer Shields's perspective, he could only restrain plaintiff by employing the taser and pepper spray and using the baton, and the alleged fact that plaintiff's mental condition made him unaware that he had the scissors and unable to release them is irrelevant to the reasonableness analysis. See, e.g., Saucier v. Katz, 533 U.S. 194, 205 (2001) ("Because 'police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation,' the reasonableness of the officer's belief as to the appropriate level of force should be judged from that on-scene perspective.") (citations omitted) (quoting Graham, 490 U.S. at 395); see also Crumley v. St. Paul, 324 F.3d 1003, 1007 (8th Cir. 2003) (noting that the right to make an arrest or stop necessarily encompasses the right to use some degree of force to effect it). Assuming as he states that plaintiff was unable to comply with Officer Shields's

instructions to release the scissors, the fact remains that a use of the taser, pepper spray, and baton concededly was appropriate because plaintiff was fleeing while armed with scissors and was not following orders. The quantum of force Office Shields used to restrain plaintiff after witnessing his behavior cannot be viewed as unreasonable in light of the circumstances. Thomas, 2005 WL 5714146 at *4. Because no violation of plaintiff's rights under the Fourth Amendment occurred, Altman v. City of High Point, N.C., 330 F.3d 194, 205 (4th Cir. 2003), Officer Schultz is entitled to the summary judgment he seeks.

Because defendant has established his entitlement to judgment as a matter of law on plaintiff's claim of excessive force, it is unnecessary for the Court to address his arguments on the question of qualified immunity.

## IV. Conclusion

For the foregoing reasons, defendants' joint Motion for Summary Judgment will be granted. An appropriate order shall issue.

Entered this 22nd day of August 2013.

/s/
James C. Cacheris
United States District Judge

Alexandria, Virginia